# CHARLESTON.

CITY OF CHARLESTON v. PUBLIC SERVICE COMMISSION.

Submitted March 12, 1919.   Decided March 26, 1919.

1. COURTS—*Original Jurisdiction of Appellate Court—Experimental Rate Order.*

   An experimental order entered by the Public Service Commission fixing the rate to be charged by a public service corporation for the services rendered by it to its patrons, covering a certain period of time, or until the further order of such commission, is such an order as is subject to control by this Court by the exercise of its original jurisdiction conferred by the provisions of § 16 of ch. 15 O of the Code.   (p. 720).

2. PUBLIC SERVICE COMMISSIONS—*Experimental Rate Order—Unreasonableness.*

   One seeking to suspend an experimental or provisional order of the Public Service Commission fixing a rate for the purpose of furnishing temporary relief to a public service corporation, as well as for the purpose of securing the evidence necessary to a permanent adjustment of its rates, must show from the evidence heard by the Commission that the enforcement of such order will result in an unreasonable and arbitrary burden upon him.   Incidental inequalities which may arise from the administration of such public service company's business under such an order will not be sufficient ground for suspending the same, where it appears that there is reasonable necessity for the evidence which will be gained by such administration in order to properly determine and re-adjust such rates.   (p. 720).

Petition by City of Charleston for suspension of order of the Public Service Commission.

*Suspension of order refused.*

*Thomas A. Bledsoe* and *Henry Cato,* for petitioner.

*S. B. Avis,* for respondent Public Service Commission.

*McClintic, Mathews & Campbell* and *John H. Holt,* for respondent West Virginia Water & Electric Co.

RITZ, JUDGE:

In July, 1918, the West Virginia Water and Electric Company, a public service corporation supplying water to the inhabitants of the city of Charleston and the town of South Charleston, made application to the Public Service Commission for authority to increase its rates. A protest was made by the city of Charleston on behalf of itself and the citizens of said city against the allowance of such increase, upon the grounds that the applicant was not furnishing an adequate supply of water for the purpose of fire protection, as required by its franchise, nor was the said applicant furnishing an adequate supply of pure wholesome water for consumption by the inhabitants thereof, as required by the terms of said franchise, but on the other hand alleged that the water being furnished by the said applicant was not only entirely inadequate to meet the needs of said city and its inhabitants, but was so impure and unwholesome that one or more severe disease epidemics had resulted from its use.

After extended hearings, the Commission on the 20th of November, 1918, entered an order finding as matter of fact that the applicant had been grossly derelict in its duty to the public, and that it had not made reasonable effort to comply with its public duty, but further found that the applicant had begun and was rapidly completing certain improvements and extensions to its plant which would make it adequate for the present needs of the city and its inhabitants, and that until the completion of these improvements certain temporary arrangements had been effected which in a large measure relieved against the complaint of shortage of water supplied, as well as the complaint of the impurity thereof; and further found that from the evidence then before the Commission, and the reports of its officers

83 W. Va.

and agents, the applicant was not receiving a fair return upon its investment devoted to the public service; that there were gross inequalities in the rates charged by the applicant, some consumers paying substantially less than the cost of the service to them, while others were paying approximately the cost thereof; that the Commission was not in possession of sufficient data at that time to make a general readjustment of the rates, but that in order to furnish temporary relief to the applicant it would be allowed to increase its rates twenty per cent. over the rates then in force, such increase to be effective until the first of July, 1919, or until the further order of the Commission, and providing that in the meantime said water company should keep careful reports and make a complete return to the Public Service Commission when required, with the view to an adjustment of its rates upon a basis equitable and fair to all parties, and also providing that the engineer and other agents of the Commission carefully observe the operation of the plant in the meantime in order that all information valuable to the Commission in making such readjustment might be available at the expiration of the experimental time fixed in the order. The city of Charleston subsequently moved the Commission to suspend this order and to rehear the proceeding, but this motion was denied on the 30th day of January, 1919, on the ground that the order was simply temporary in its effect, and that the Commission would not be in position to make permanent adjustment' of the rates until such information was secured by it as could only be available from observing the plant in operation, under the conditions provided for in the former order. An application was then made to this court to suspend the order of the Commission allowing the increased rate.

The Commission urges that this court is without jurisdiction to suspend such order, for the reason that it is only a temporary and interlocutory one, and that the jurisdiction of this court to prohibit the execution of the Commission's orders only goes to such orders as are final, and relies upon the case of *City of Bluefield* v. *Bluefield Water Works & Improvement Company*, 81 W. Va. 201, in support of this

contention. The petitioner contends that that case does not apply here for the reason that the Public Service Commission never had jurisdiction to entertain the application for increased rates, because the applicant water company was not furnishing an adequate supply of wholesome water at the time it made said application, nor was it doing so at the time the order allowing the increased rate was entered; and further that the order is so far final as justifies a review thereof under the provisions of § 16 of ch. 15 O of Barnes' Code.

If, as contended, this Court is without jurisdiction to review such an order of the Commission as is involved here, that will end the case. It is true we held in the Bluefield case, above cited, that orders of the Public Service Commission valuing the property of and fixing the rates to be charged by a public service corporation for experimental purposes, and retaining the case for future action after the result of such experiments is ascertained, are not final orders subject to be controlled by this Court. In attempting to apply the conclusion reached in that case we must consider the language used in connection with the facts involved in the controversy. There an increase in the rates had been granted by an experimental order, and neither the city nor any of the inhabitants were complaining of the increase allowed, but the water company was complaining that the increase allowed it was not sufficient, and it was determined that that order would not be reviewed. The discussion indulged in in the opinion discloses that this conclusion was based largely on the ground that the order was a proper one, and it can reasonably be drawn from that opinion that the court would have exercised jurisdiction if it had reached the conclusion that the order involved was unreasonable. It is true § 16 of the Public Service Commission Act provides for invoking the jurisdiction of this Court to review an order of the Public Service Commission by any party feeling aggrieved by a final order thereof. In what sense did the Legislature use the word final in that statute? Of course, if we say that the word final there means the last order in the case, or the order disposing of it finally, then

the order complained of here is not such an order. If, however, we take the view that what the Legislature meant was such an order as grants relief to one party or the other, and changes the situation of the parties to their material advantage or disadvantage, the order complained of here is such an order. While in its strict sense a final order is the last or concluding order in a case, in the popular sense, and in the sense in which it is most used by the lawmakers, as well as by the legal profession, it is ordinarily considered to be such an order as is subject to review by appeal, writ of error, or other appellate process, and our statutes providing for appellate process in other cases do not in all instances contemplate the last or concluding order in the case as the only one subject to review by such process. We are of the opinion that the Legislature in the use of this term meant to cover all such orders as change the position of the parties, as take from one and give to the other something that he was not entitled to, and could not receive before. If we do not give the statute this construction, then the Public Service Commission may, by these provisional or experimental orders, put its actions in most cases beyond the review of this Court for such a period of time as would make the relief of little value when it was finally obtained. Of course, it is not to be presumed that the Public Service Commission will abuse its authority or its jurisdiction; neither is such presumption indulged in in relation to any other court or tribunal, but experience teaches that such bodies do at times exceed the powers conferred upon them, and to allow an order based upon such an excessive exercise of power, or upon an arbitrary exercise of authority to remain in force, even for only a short time, might do incalculable injury to those directly affected thereby. I know it may be answered that the courts of equity would, perhaps, furnish relief by way of injunction against executing any unreasonable or arbitrary order, but it is clear from a reading of the Public Service Commission Act that the Legislature intended that act to be full and comprehensive, and to provide a quick, even, I might say, a summary remedy, for correcting the arbitrary

and unwarranted orders of the Commission.  We are of the opinion, therefore, that the order involved here, while it is experimental in its effect, while it is entered largely for the purpose of securing evidence to the end that a final determination may be reached fixing the proper status of the parties, is nevertheless such an order as is within the power of this Court to review.

The question then is, is the order justified by the findings of the Commission?  We have recited at some length its findings of fact.  It is true the Commission finds as a fact that the applicant water company has not performed its public duty.  It finds also as a fact that the applicant has, and had at the time of the entry of the order, temporarily provided means for overcoming to a great extent its failures of the past, and that it then had under construction improvements and extensions which would fully meet the wants of the public served by it.  It further found as a fact that the return received by the applicant for the service it actually rendered, even though the same was inadequate and insufficient, was not a proper and just return upon the investment that was actually devoted to furnishing that service.  Just what changes would be necessary in order to make this return adequate and sufficient the Commission was unable to say, but it finds as a matter of fact that an increase of twenty per cent. in the rates then being received would not be more than the applicant was entitled to; it might be less.  It might be that if this order purported to permanently adjust the rates for the applicant, it would be improper for the purpose.  Confessedly it is but an estimate or approximation of the proper thing to be done in order that immediate relief may be furnished.  It is quite well recognized by the courts that in granting relief against such experimental orders as this the courts will not interfere to set them aside except upon a showing that they will work a substantial hardship to the party complaining.  *Knoxville* v. *Water Co.*, 212 U. S. 1; *Des Moines Gas Co.* v. *Des Moines*, 238 U. S. 153.  If the findings of fact by the Commission are to be relied upon, and counsel in argument do not question

the correctness of these findings, this order is not an unreasonable or arbitrary exercise of power upon the part of the Commission; it does not give to the applicant any more than it is fairly entitled to receive, while it may give to it much less. It imposes no undue hardship upon the patrons of the applicant, and any incidental inequalities which may result from the administration of the applicant's business under the order, we think are fully justified by the apparent necessity of conducting the applicant's business under some such experiment in order that the Commission may be furnished with a basis upon which to make a readjustment of rates fair, not only to the applicant, but to its patrons as between themselves, so that an undue burden may not fall upon any patron while another receives the service rendered by the applicant for much less than the cost thereof.

Our conclusion is therefore to refuse to suspend the order complained of.

MILLER, PRESIDENT, *(concurring)*:

I concur in denying the relief sought by petitioner, but not for the reasons given in the majority opinion. I am unable to distinguish this case from the *City of Bluefield* v. *Bluefield Water Works & Improvement Company,* 81 W. Va. 201, either in the material facts involved or in the principles of law applicable thereto. In the Bluefield case the water company it is true had been allowed a temporary increase in rates, and it complained because it had not been allowed greater rates and contended that the rates allowed were confiscatory, and that it had been deprived of its property without due process of law, contrary to the Federal Constitution. In the case at bar the water company was allowed a temporary or experimental increase of rates, and the city on behalf of its citizens is asserting a violation of the same provisions of the Constitution, because the order requires of the city and its citizens the payment of rates in advance of the contract rates which amounts to the taking of their property without due process of law. So that the only distinction to be drawn between the two cases is simply the fact

that in the one the water company was the petitioner and in the other the municipality is the complaining party, but the grounds of complaint are the same in both cases.

I am, therefore, unwilling to be marched up hill and then right down again without any good reason therefor, and I see none in the present case.  I think the opinion of the court takes too comprehensive a view of the authority conferred upon this court by the act creating the Public Service Commission.  We held in *United Fuel Gas Company* v. *Public Service Commission,* 73 W. Va. 571, that the jurisdiction of this court conferred by section 16 of said act was limited to matters purely judicial and does not extend to matters purely administrative, executive or legislative, such jurisdiction not being conferred by the Constitution.  And the Bluefield case, using the very words of the statute, limits our jurisdiction so far as conferred by the statute to *final orders.*  The court, by what appears to me to be a very strained effort, proposes to extend that jurisdiction to one which would enable us in all cases to supervise and control the commission at every step in the course of its progress in the administration of the law, and before it had reached a final judgment.  A final judgment, as we have decided, is not subject to review by us until it is beyond the power which the commission may constitutionally exercise, or beyond its statutory power, or based upon a mistake of law. *United Fuel Gas Company* v. *Public Service Commission, supra,* syllabus point 3.  And this was the construction given like provisions of the act creating the Interstate Commerce Commission, from which our statute to a large extent was drawn, by the Supreme Court of the United States.

Now, I think it fair to assume that where the Legislature said "final order," it had some reference to the meaning of these words as understood and defined in our decisions and as used in other statutes limiting our jurisdiction.  With respect to the order under review, the commission, on a motion for a rehearing addressed to it by the petitioner, denied the motion on the specific ground that its order was purely temporary, and because it found after taking a vast

volume of testimony it had been unable to reach a just and proper conclusion without such experiment. It concluded that experience was the only witness upon whom it could safely rely to do justice between the parties. This is a jurisdiction which I think is clearly comprehended in the act creating it, which is legislative, executive and administrative in nature, and is not within our jurisdiction to control, direct or review, except when covered into its final order. Then, and not until then, does our jurisdiction attach. Suppose the order of the commission for some good reason had been to continue the case for six months or more, to enable the parties to take the testimony of absent witnesses to establish the same facts it proposes to develop by the experimental process ordered, leaving the prevailing rates in force, and forsooth depriving the water company in the meantime of just compensation on its capital invested. The logic of the opinion of the court would say that this court would have the power to intervene and say to the commission in advance of its final judgment: "Your act is arbitrary and unjust; you shall raise the rates pending investigation." I do not find such jurisdiction in the organic law of the commission, and I must decline to read into it by construction any such power. We said in *State ex rel. Public Service Commission* v. *Baltimore & Ohio Railroad Company,* 76 W. Va. 399, syl. 6: "Until the Public Service Commission, pursuant to the authority conferred upon it by said act, has investigated and determined that a particular rate complained of is unreasonable, and invalid as to a particular carrier, the courts cannot interfere by injunctive process, or otherwise, to stay the hand of the commission in the performance of its proper duties and functions." Much more might be said and many authorities cited in support of these views, but I have said enough to indicate my opinion that the relief ought to be denied solely on the ground that we have no final order of the commission before us and therefore no jurisdiction by the statute to consider or review it for any purpose.

WILLIAMS, JUDGE, concurs in this note.

*Suspension of order refused.*