THE CITY OF NEW YORK, Plaintiff, *v.* THE NEW YORK TELEPHONE COMPANY, Defendant.

(Supreme Court, New York Special Term, April, 1921.)

Statutes — interpretation — power of public service commission to fix telephone rates — injunctions — Public Service Commissions Law, §§ 23, 92, 97.

The Public Service Commissions Law neither confers power upon the public service commission nor imposes the duty upon it to fix the rates which shall be charged in all cases for telephone service. (P. 267.)

Under section 97 of the Public Service Commissions Law the commission has the legal power not only to make orders fixing maximum rates for telephone service but to abrogate such orders and consent to an increase of rates. (P. 269.)

Under the Public Service Commissions Law the commission, aside from the power delegated to it by the legislature to fix maximum rates for telephone service, has power to consent to an increase of rates without determining what rates are reasonable and should thereafter be observed as maximum rates, when it appears that the conditions which prevailed when the earlier order was made have materially changed. (P. 272.)

The right of the public service commission to consent to an increase in a rate previously fixed is not subject to any limitation that it shall be given only after a complete hearing sufficient to enable the commission to determine the just and reasonable rates to be charged thereafter. (P. 267.)

An order of the public service commission fixing the maximum charges for telephone service is an attempt to predict for the

future the charges that will yield a fair return, and so long as the Public Service Commissions Law contains no provision that the commission may not abrogate an order made by it fixing maximum rates for telephone service or consent to an increase except as part of an order fixing new rates, the commission, pending the hearing and determination of an application for an increase in rates, may consent that the rates fixed and determined by its previous order be increased by " certain additional percentages." (P. 268.)

Subject to the common law rule that no public service corporation may charge more than a reasonable rate for service, a telephone company may at will change its rates for telephone service only by filing schedules in accordance with section 92 of the Public Service Commissions Law, unless or until the public service commission has by an order fixed the maximum rate for such service in accordance with said section of the statute. (P. 267.)

By virtue of section 23 of the Public Service Commissions Law such an order remains in force only until " changed or abrogated by the commission," and when such order is abrogated the right of the telephone company to increase its rates by filing schedules is exactly the same as before the original order was made. (P. 268.)

ACTION for an injunction.

John P. O'Brien, corporation counsel (M. Maldwin Fertig, Joseph A. Devery, of counsel), for plaintiff.

Charles T. Russell (Edward L. Blackman, John L. Swayze, Edward W. Beattie, Carl M. Abromeit, of counsel), for defendant.

LEHMAN, J. On the 30th day of March, 1915, the public service commission of the state of New York for the second district, in accordance with the powers conferred upon it under section 97 of the Public Service Commissions Law, made an order determining the rates to be thereafter observed and in force as the maximum to be charged for telephone service within the zones embraced in the territory of the city of New

York. The said order provided that the rates therein specified should remain in force for a period of three years and thereafter until the further order of the commission. On the 16th day of September, 1919, the public service commission made an order which constituted a modification of the previous order of September 16, 1919, reducing certain rates as specified in the earlier order, and it was provided therein that such rates should remain in force for a period of one year and thereafter until the further order of the commission. On the 1st day of October, 1920, the New York Telephone Company filed a petition '' for the consent of the Commission to the Establishment of a New Schedule of Rates for Telephone Service in the City of New York,'' and it asked that the commission '' after such hearing and deliberations as it may deem necessary, make an order authorizing and establishing the proposed rates as the legal rates to be charged for telephone service within the City of New York, such rates to be effective from October 1, 1920, or as soon as the reasonableness of said rates can be determined, and that it will make such further order or orders and such modifications of former orders as may be necessary in the premises.'' On the 18th day of October, 1920, the public service commission began hearings upon this petition and these hearings were continued from time to time till March 7, 1921. At these hearings the New York Telephone Company offered testimony in support of its petition, and the city of New York appeared regularly throughout the proceedings and cross-examined witnesses, but owing to the volume of the testimony presented by the petitioner and the intricacy of the details it has not yet completed the cross-examination of the petitioner's witnesses or presented its evidence to combat the claims of the New York Telephone Com-

pany, and no testimony of any kind has yet been presented to the commission in behalf of the consumers. On the 23d day of February, 1921, the New York Telephone Company filed an additional petition with the commission for leave to put into immediate operation a schedule of rates to produce additional revenue. 25 St. Dept. Rep. 414. The city of New York opposed the application and insisted that the commission was without power or jurisdiction in the midst of the proceeding without having fully heard the proof offered by the city, to make any increase whatever; that the commission had no power to make temporary rates and argued upon the merits of the case as well as upon the law. Thereafter and on the 17th day of March, 1921, the public service commission made and entered an order which recites among other things that "It now appears to the satisfaction of the Commission from the evidence before it in the proceeding, and also from its knowledge and information of the general condition of said company, derived from its various reports filed with this Commission according to law and pursuant to the order of this Commission, that the increase in wages of employees made effective as aforesaid since the order of this Commission of September 16th, 1919, requires an additional annual expenditure of approximately eleven million dollars by said company, and to that extent decreases the income of said company from the amount anticipated it would receive from the rates established by said order of September 16th, 1919, when said order was made by this Commission." The order then provides that " pending the further continuation of this proceeding and without affecting the final determination thereof, the Commission does hereby consent that from and after April 1st, 1921, and until its further

order in the premises, the rates of said New York Telephone Company for exchange telephone service in the City of New York as fixed and determined by the said orders of the Commission dated March 30th, 1915, and September 16th, 1919, be increased by " certain additional percentages. This consent was made conditional upon the filing of a bond providing for the repayment, to each and every subscriber in the city of New York, upon the final determination of the proceeding, of any amounts paid by said subscribers in excess of the rates or charges which may be fixed upon such final determination, and it was further provided in the order that " upon compliance with said condition said company may file upon five days' notice a tariff in accordance with the terms of this order." The city of New York now seeks to enjoin the New York Telephone Company " from imposing or entering against or collecting from any consumer of telephone service any rate or charge above the rates and charges fixed by the order of the Public Service Commission dated September 16, 1919."

The plaintiff claims that the public service commission was without power to make this order of March 17, 1921, because it is in effect a provisional order made before the completion of a hearing still pending and is an order which is intended to make the final determination of the commission after the completion of the hearing retroactive from the date of the provisional order. If the order of March seventeenth must be regarded as a provisional determination of " the just and reasonable rates, charges and rentals to be thereafter observed and in force as the maximum to be charged, demanded, exacted or collected for the performance or rendering of the service specified," then the contention of the plaintiff is sound, for the power of the public service commission to make such deter-

mination is conferred only by section 97 of the Public Service Commissions Law and that section gives the public service commission power to determine such rates only after a " hearing " and does not expressly confer upon the commission any power to make any provisional or conditional determination pending the completion of the hearing nor can any power of such kind be inferred from the general provisions or intent of the act. In my opinion, however, the order of March 17, 1921, is merely a consent of the commission to an increase in the rate previously fixed by the commission and section 97 of the Public Service Commissions Law forbids an increase only if made without the consent of the commission, and I can see no ground for holding that the right to grant such consent is subject to any limitation that it shall be given only after a complete hearing sufficient to enable the commission to determine the just and reasonable rates to be charged thereafter.

The Public Service Commissions Law does not impose upon the commission either the power or the duty to fix the rates which shall be charged in all cases for telephone service. Section 92 of the law requires every telephone corporation to file schedules of its charges and provides that unless the commission otherwise orders no change shall be made in any rate except after thirty days' notice to the commission. Subject to the common law rule that no public service corporation may charge more than a reasonable rate, a telephone company may at will change its rates merely by filing schedules in accordance with this section unless or until the public service commission has by order made after a hearing, fixed the just and reasonable rates to be charged as the maximum for telephone services in accordance with the provisions of section 97. As long as such order remains in force the

Telephone Company is bound by it, but under section 23 of the Public Service Commissions Law the order remains in force only until " changed or abrogated by the commission " and when such order is abrogated then obviously the right of a telephone corporation to increase its rates by filing of schedules is exactly the same as (before the original order was made, and when the commission gives its consent to an increase of rates above the amount of the rates it had previously fixed as the maximum rate, then *pro tanto* the previous order is abrogated or at least suspended. The statute contains no provision that after an order fixing the maximum rates to be charged the commission may not abrogate such order or consent to an increase except as part of a new order fixing new rates which thereafter shall be observed and in force as the maximum to be charged. Such an order fixing maximum charges when made, like a statute of the legislature fixing maximum rates, is an attempt " to predict for future years the charges that will yield a fair return. The prediction must square with the facts or be cast aside as worthless. *Ex parte Young*, 209 U. S. 123, 147, 148. It must square with them in one year as in another, at the beginning but equally at the end. In all such legislation from the hour of its enactment there thus inheres the seed of an infirmity which the future may develop. It is the infirmity that always waits upon prophecy; the coming years must tell whether the prophecy is true or false. All that we can. say at the outset is that the power to regulate exists. The validity of its exercise depends upon the nicety of the adjustment between forecast and events. This is as true of a regulation which looks forward a year as one which looks forward a decade or a century. In either case with differences only of degree, there is a forecast

of the future which must be justified by the event.''
*Municipal Gas Co.* v. *Public Service Commission*, 225
N. Y. 89.   The legislature having power to regulate
telephone rates has delegated this power to the public
service commission.   By virtue of this delegated
power the public service commission may fix maxi-
mum rates to be charged; but the legislature has also
recognized that conditions may change and the maxi-
mum rate once fixed may not under changed condi-
tions continue to be reasonable.   Under such circum-
stances the public service commission may after a
hearing fix new maximum rates, that such a hearing
may as in this case, require an enormous mass of
evidence and extend over a period of many months.
It would be unjust and in some cases even beyond the
power of the legislature to require the corporation
furnishing telephone service to abide during these
months by an order made at an earlier period if the
'' results '' have not justified the '' forecast.''   The
legislature has given the public service commission
the power not only to make orders fixing maximum
rates but to abrogate such orders and to '' consent ''
to an increase of rates.   It would be unreasonable to
hold without a clear expression by the legislature that
when the commission is of the opinion that conditions
have changed to an extent which renders the old rate
unreasonable and perhaps unconstitutional, it must
continue its old order in force and may not '' consent ''
to an increase of rates pending the time when it can
after a full hearing make a new '' prophecy '' as to
what will constitute reasonable rates in the future.
The commission has power not only to regulate rates
but also to regulate service; it might under such power
make an order which would greatly increase both the
value and the cost of service.   Can it be contended
that it cannot make such an order to improve the

service until after it has determined what will constitute a fair and reasonable maximum rate for the future upon necessarily protracted hearings or on the other hand that it can order the immediate improvement of service at increased cost, even though such increase of cost might render the return to the company unreasonable and confiscatory without consenting to an immediate increase of rates proportionate to the increased cost of service but postponing such increase until it has held hearings to determine what will be a fair and reasonable rate for the future, taking evidence at that time of all the factors which it must consider in fixing such a rate under section 97 of the Public Service Commissions Law. If the legislature had intended such construction, then the words " thereafter no increase in any rate, charge or rental so fixed shall be made without the consent of the Commission " in subdivision 1 of section 97 would be superfluous and meaningless. For these reasons in my opinion the legislature clearly intended that aside from power delegated to the commission to fix maximum rates after a hearing it should have power, upon such conditions as it saw fit to impose in the reasonable exercise of its discretion, to consent to an increase of rates whenever in its opinion the order previously fixing the maximum rates should no longer even temporarily remain in force. If at the time such consent is given no hearings are being held to determine the reasonable maximum rates to be observed in the future the commission may be compelled to hold such hearing upon a complaint that the increased rates are unjust or unreasonable, and the public and the corporation will thereby be protected, and if on the other hand, as in this case, such hearings are pending, the commission may make its consent conditional upon the continuance of such hearings and require a bond

for the repayment of any excess over the rate which may be fixed upon the final determination of the pending proceeding as the reasonable rates and charges, but in neither case does the commission through its consent determine either finally or provisionally what constitute fair and reasonable rates to be charged thereafter as a maximum. It merely decides that pending the final determination of this question after a hearing its previous order fixing such rates should no longer remain in force.

It is urged by the city that such a construction nullifies the intent of the statute by giving the commission in spite of its previous orders the power arbitrarily to grant increases *ex parte,* and without being subject to judicial review, and that the commission might each time it makes a final determination immediately thereafter consent to an increase of rates so that in fact there would be no regulation. I need not now consider whether the order made by the commission consenting to an increase of rates is subject to review by the courts through a writ of certiorari, but I am certainly not holding that the commission may act unreasonably or arbitrarily in granting such consent. The persons entrusted with the execution of important powers under any law can act unreasonably and arbitrarily and in contravention of their clear duty and thereby for a time nullify the law, but public officers are always presumed to act reasonably in the performance of their duty, and when they fail to do so they can be removed, and no law should receive a construction based upon any assumption that public officers will be faithless to their trust. In the present proceeding it is fair to state that the city does not even claim that the commissioners have acted arbitrarily if they had power to act at all. It is not alleged that the old rate does in fact afford a reason-

able return or that the cost of service has not in fact increased by the sum of $11,000,000 since the old rate was fixed, and the only claim of wrong is that the commissioners acted without power and could grant no such consent until the determination of the hearings for new maximum rates. I need not, even now, decide that the commission has power to grant such consent *ex parte* and without a hearing, for as pointed out above, the complaint itself alleges that the "city opposed the application and insisted that the commission was without power or jurisdiction in the midst of any proceeding without having fully heard the proof offered by the city to make any increase whatever; that the Commission had no power to make temporary rates and argued upon the merits of the case as well as upon the law." I merely decide that the commission under the statute has power to consent to an increase of rates without determining what rates are reasonable and should be observed thereafter as maximum rates, when it appears that the conditions which prevailed when its earlier order was made have materially changed.

While the power of the commission must be determined by the language of the New York statute and the construction of similar statutes of other jurisdictions by the courts of such jurisdictions are of little service, it is significant of the views of the legislatures and the courts in regard at least to the policy of granting such powers that in the case of *Chicago Railways Co.* v. *City of Chicago,* 126 N. E. Repr. 585, the Supreme Court of Illinois stated: "To sustain the judgment of the circuit court it is insisted that the commission had no authority to fix a temporary rate based upon increased operating expenses and could only make a change upon a full hearing which would demonstrate what a permanent rate ought to be. So far as we have been informed every court which has

considered that question has determined to the contrary. *Omaha & Council Bluffs Street Railway Co.* v. *Nebraska City Railways Commission* (Neb.), 173 N. W. 690; *City of Charleston* v. *Public Service Commission* (W. Va.), 99 S. E. 63; *Kansas City* v. *Public Service Commission,* 276 Mo. 539; *O'Brien* v. *Public Utilities Commissioners,* 92 N. J. Law 44.'' It is also fair to point out that in the new Public Service Commissions Law enacted by the present legislature of this state the public service commission is granted express power to make provisional rates.

Even if, however, I held that the public service commission acted without power in making its order of March 17, 1921, I should still refuse an injunction. If the old rates are now confiscatory the New York Telephone Company could not only disregard those rates but might even under proper circumstances enjoin the public service commission from enforcing them. See *Municipal Gas Co.* v. *Public Service Commission, supra.* This court could not by its injunction compel the defendant to observe a confiscatory rate where even the public service commission could not enforce it. The complaint herein does not allege that the old rate is not confiscatory or the new rate unreasonable and though there may ordinarily be a presumption that the rate established by the public service commission is and remains reasonable and lawful, yet in the absence of any such allegation in the complaint and in view of the conceded facts herein I do not feel that such a presumption is sufficiently strong to justify the exercise of the extraordinary power of injunction. There are other points raised by the defendant which I have not found necessary to consider because for the reasons above stated the complaint must in any event be dismissed with costs.

Complaint dismissed, with costs.