CHARLES H. MCDOUGALL et al., Landlords, *v.* SERVICE GARAGE, INC., Tenant.

Municipal Court of the City of New York, Borough of Manhattan, October 25, 1946.

*William A. Lamb* for landlords.

*Myron Sulzberger, Jr.,* for tenant.

HABER, J. This is a summary proceeding for nonpayment of rent of certain commercial space (L. 1945, ch. 3, § 2, as amd.).

The tenant is in possession under a lease dated February 26, 1918, extended to September 1, 1948. The rent reserved was $5,000 per annum, payable in monthly installments of $416.66, plus taxes and insurance.

On October 31, 1942, for a valuable consideration (*Matter of Blossom Heath Inn* v. *Healy,* 147 App. Div. 911; *Copper* v. *Fretnoransky,* 16 N. Y. S. 866), a modification agreement was entered into, whereby the rent reserved was reduced to $2,000 per annum, payable in monthly installments of $166.66, plus taxes and insurance, effective as of June 1, 1942, and operative only so long as Federal regulations for gasoline and tire rationing should remain in force and effect.

In December, 1945, the foregoing regulations were discontinued.

The first question to be determined is whether, beginning January, 1946, the tenant was obligated to pay rent at the rate fixed by the original lease and extension, or at the rate "reserved or payable" under the modification agreement in force on March 1, 1943, plus 15% of such rent (L. 1945, ch. 3, § 2, subd. [e]).

The Commercial Rent Law followed in the wake of a public emergency accelerated by the recent war (L. 1945, ch. 3, § 1). The emergency described in the statute is to continue until July 1, 1947 (L. 1946, ch. 272, § 5). This legislation was enacted in the exercise of the police powers of the State, and is constitutional (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571, 580, appeal dismissed 326 U. S. 696). The primary

duty of the court is to ascertain and give effect to the intention of the Legislature in enacting the Commercial Rent Law (*Rosen v. 370 West 35th St. Corp.*, 184 Misc. 172).

Subdivision (e) of section 2 of the Commercial Rent Law defines " Emergency rent " as follows: " The rent reserved or payable under any lease, agreement or tenancy of commercial space in force on March first, nineteen hundred forty-three, plus fifteen per centum of such rent * * *.''

It seems to me that there is no escape from the proposition that on March 1, 1943, the rent " reserved " in the lease and extension, as modified by the foregoing agreement of October 31, 1942, was $166.66 per month; and that this was the only rent " payable " under those instruments, on March 1, 1943.

The calculation of the " Emergency rent " after the discontinuance of the foregoing Federal regulations, involved the purely mathematical process (cf. *Seacoast Trust Co.* v. *Mugman*, 184 App. Div. 895, 896, revg. 100 Misc. 482, on dissenting opinion of BIJUR, J. pp. 486–488) of adding 15% to $166.66, the rent " reserved or payable " on March 1, 1943. Thus $191.66 became the " Emergency rent," and any demand during the continuance of such emergency (L. 1946, ch. 272, § 5), in excess of such amount, is presumed to be unjust, unreasonable and oppressive (L. 1945, ch. 3, § 3, as amd.); and to the extent of such excess the same is uncollectible (L. 1945, ch. 3, §§ 6, 7, as amd.).

Furthermore, since the definition of " Emergency rent " is precisely the same under both the Commercial as well as the Business Rent Law, except that in the latter the operative date is June 1, 1944 (L. 1945, ch. 3, § 2, subd. [e], as amd.; L. 1945, ch. 314, subd. [c], as amd.), I think that *Adams* v. *Riker Operating Co.* (270 App. Div. 755, affd. 296 N. Y. 521) is controlling authority in favor of the tenant.

In that case the original lease was for a term of ten years, ending February 28, 1946, at an annual rental of $3,900, payable in monthly installments of $325. On February 17, 1943, by a valid modification agreement, the annual rent was reduced to $3,000, payable in monthly installments of $250, for the period March 1, 1943, to February 28, 1945. The question involved was whether, after February 28, 1945, the tenant was obligated to pay rent at the rate reserved in the original lease for the period March 1, 1945 to February 28, 1946, or whether " Emergency rent " was payable on the basis of the rate in effect on June 1, 1944, the operative date in the Business Rent Law (L. 1945, ch. 314, § 2, subd. [c]), as amd.). The defendant defended the action on the ground that it paid the " Emergency rent " of $287.50

per month. The Appellate Division affirmed an order denying plaintiffs' motion for summary judgment and for judgment on the pleadings, but granted leave to appeal (270 App. Div. 810), certifying the following questions: " 1. Where a lease made prior to June, 1944, and terminating on February 28, 1946, fixed the amount of rental payable monthly at $325, and said lease prior to June, 1944 was modified by fixing such monthly rental at $250 until a certain date subsequent to June 1, 1944, and in view of the enactment of Chapter 314 of the Laws of 1945, is the monthly rental due, after the expiration of the period provided for the payment of such lesser sum, the amount as specified in the original lease?

" 2. In the circumstances specified in Question 1, and in view of the statute therein referred to, is the amount payable monthly after the expiration of the period provided for in the modified agreement, the amount required to be paid pursuant to such modification for the month of June, 1944, plus 15% of such amount?"

The Court of Appeals affirmed the order of the Appellate Division, answering the first question in the negative, and the second question in the affirmative.

Accordingly, I hold that the " Emergency rent " in this proceeding is $191.66 and not $416.66, and that the excess is unjust, unreasonable and oppressive, and uncollectible.

The landlords failed to furnish the tenant with the statement required by section 3 of the Commercial Rent Law and hence, as provided by this section, " no rent accruing shall be collectible by such landlord during the period he is in default." (*Iago Realty Corp.* v. *Marmin Garage Corp.,* 186 Misc. 478; *Apfelbaum* v. *Klutch,* 186 Misc. 883; *Rogers Place Corporation* v. *Medalie,* 59 N. Y. S. 2d 819.)

The tenant's counterclaim for $250, the excess over the " Emergency rent," paid for the month of January, 1946, is allowed (*Silver* v. *Comninous,* 60 N. Y. S. 2d 123).

Finally, there is the tenant's counterclaim, based on section 4 of the Commercial Rent Law which provides as follows: " Any landlord who shall wilfully demand or accept a rent in excess of the emergency rent, or a rent fixed pursuant to section four of this act, shall forfeit one succeeding month's rent."

The word " wilfully " in this statute which imposes a penalty or forfeiture, means much more than intentionally. It means malevolently, with an evil purpose, and without grounds for believing the act to be lawful. It implies some element of turpitude. As Justice HOLMES said in *Towne* v. *Eisner* (245 U. S.

418, 425): " A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

On the record in this case, I find that the landlords' conduct was not willful within the meaning of this statute (cf. *Matter of 30 Wythe Ave. R. Corp.* [*Ferro-Co Corp.*], 184 Misc. 1055, 1057).

Final order for the tenant, dismissing the petition, and judgment for the tenant on its counterclaim for $250.