Simon J. Liebowitz, J.
The plaintiff, in its short-form complaint, alleges that the defendant, in violation of the tariff rates as filed with the Public Service Commission, overcharged the plaintiff, a New York corporation, with its place of business located in Brooklyn, the sum of $623 for listings during the years 1967 and 1968, in the classified directories for Queens and Manhattan. There is no claim of overcharges for the Brooklyn classified directory. The defendant agrees that the sum of $623 would be a correct mathematical calculation if the premise of the plaintiff’s contention were correct.
However, the defendant claims first that the rate charged to the plaintiff was subject to a written agreement signed by the plaintiff and the rates for the listings reflected in Public Service Commission No. 800 were only applicable to those listings listed in the Brooklyn classified directory and that any of the listings in the Boroughs of Manhattan or Queens classified directory were in the nature of advertisements which were not subject to tariff regulations of the Public Service Commission.
I find from all the evidence that all the classified directories contain advertisements, which in appearance and fact, are not within the orbit of a definition of a listing as defined in the aforesaid tariff regulations. Such definition reads as follows:
‘1 B. CLASSIFIED DIRECTORY
1. Definition. A classified listing consists of a name, address and telephone number in light face type under a classification in a classified directory published by the Telephone Company.”
Advertisements in general contain material more elaborate and descriptive of the nature of the person’s business. These advertisements and charges are obviously not subject to the tariff regulations of the Public Service Commission and the charges for the same are completely controlled by the defendant telephone company. If the plaintiff had placed such an advertisement in the Brooklyn classified directory, it is unquestioned that such an advertisement would not be subject to the tariff regulations relating to listings.
*679 It has long been established by the decisions that a utility may engage at the same time in both a utility and nonutility business and further that although the first is subject to regulation, the second is not. (Delaware, Lackawanna & Western R. R. Co. v. Morristown, 276 U. S. 182, 194; Great Northern Ry. v. Minnesota, 238 U. S. 340, 346; Terminal Taxicab Co. v. District of Columbia, 241 U. S. 252.)
Both the Public Service Commission and courts of this State have recognized a distinction in cases involving the classified directories. In Matter of New York Tel. Co. No. 15235, on March 10, 1952 (Annual Report of Public Serv. Comm., 1952, pp. 343, 346) the Public Service Commission stated in part: ‘ ‘ Certain of the sources of the company’s income are not subject to the regulatory powers of this commission. For example, we have no power to fix advertising charges in the classified directory and we exercise no control over interstate toll rates, which are fixed by the Federal Communications Commission.”
Again, in Case No. 12190, decided February 6, 1946: “ The business of publishing the directory is incidental and certainly was not covered by the above quoted language; and there is no specific statutory requirement for the filing of advertising rates, and hence, there has been no direct violation of the statute by the company in not filing its rates. ’ ’
In Abco Moving & Stor. Corp. v. New York Tel. Co. (193 Misc. 96; affd. 274 App. Div. 779, mot. for lv. to app. den. 274 App. Div. 823; mot. for lv. to app. dsmd. 298 N. Y. 637) the court, in passing-on an application for a preliminary injunction considered the nature of the service performed by the telephone company in publishing a classified directory and stated as follows (p. 96): ‘ ‘ Plaintiff seeks an injunction to restrain defendant pendente lite from refusing acceptance of plaintiff’s advertisements in the classified telephone directories. No clear right to such relief has been demonstrated. In my opinion, the telephone company in publishing a classified directory does not perform an essential public service except with respect to ordinary listings therein. As to advertisements the position of a telephone company is analogous to that of the publisher of a newspaper or magazine.”
It is the contention of the defendant telephone company, that the language of the regulation is so clear and unequivocal that it lends itself to no other interpretation but that the listings in the Queens and the Manhattan classified directories were in the nature of advertisements, were subject to the agreement between the parties and not subject to the regulation.
*680 The issue to be determined is whether listings in the Manhattan and Queens directories are in fact advertisements, not subject to the tariff regulation. Subdivision B of the regulation set forth above, standing by itself, would clearly place the listings of the plaintiff in the Manhattan and Queens classified directories within its definition. The listings in form and in fact which were placed/ in the Manhattan and Queens classified directories, were and are exactly within the definition. This subdivision, standing alone, would leave this court no alternative but to render a decision in favor of the plaintiff without further study. However, the entire regulation must be examined in order to arrive at a decision. Subdivision B2(a) sufficiently categorizes the plaintiff’s business as being entitled to a' classified listing.
During the trial the defendant telephone company described the listings in the Manhattan and Queens classified directory as advertising listings but in their records the light-faced listings were described as “ regular related listings.” Subdivision B2(b) reads as follows:
‘ ‘ Regulations
“ a. A classified listing is provided only in connection with business service and service of clergymen, physicians, surgeons, dentists, osteopaths, chiropodists, podiatrists, optometrists, chiropractors, physiotherapists, Christian Science practitioners, veterinary surgeons, registered nurses and licensed practical nurses.
‘ ‘ b. Such listing must be the same as the listing in the alphapetical directory for the territory in which the telephone service is located except that the business designation is omitted.
“ c. Such listing may appear only in the classified directory for the territory in which the telephone service is located.
‘ ‘ d. Such listing may appear only once in the classified directory and under any established classification descriptive of the business of the listed party.
“ e. Classifications are established by the Telephone Company.”
The record of the trial reveals that the listing of the plaintiff appeared in the alphabetical directory for the Boroughs of Manhattan and Queens as well as the Borough of Brooklyn and was the same as the listing in the Manhattan, Queens and Brooklyn classified directories except that the business designation was omitted. Subdivision B2(c) read as follows:
*681 1 ‘ Bates
“ a. In the New York Metropolitan Exchange Area and in the exchange of Amityville, Buffalo, Cold Spring Harbor,
Farmingdale and Syracuse
First listing for each subscriber.............. No charge
First listing for each joint user............... $ .75 per mo.
Additional listings Night listings requiring two directory lines.. 1.50 per mo.
All other listings........................... .75 per mo.
“ b. In all other exchanges (
First listing for each subscriber............. No charge
First listing for each joint user............... $ .50 per mo.
Additional listings Night listing requiring two directory lines.. 1.00 per mo.
All other listings........................... .50 per mo.
‘ ‘ The rate for each such listings will be effective with the subscribers’s billing date on or next succeeding the publication date of the classified directory in which the listing appears.”
The interpretation of the meaning of this subdivision must be related to the words — ‘ ‘ for the territory in which the telephone service is located.” Is the scope of the meaning of the words “ in which the telephone service is located,” limited to the Borough of Brooklyn only and do the words, ‘ ‘ in which the telephone service is located ” mean the place in which the physical telephone is located or does it embrace an area beyond the Borough of Brooklyn? There is no doubt but that the publication of the listings in the alphabetical directory and the lightfaced listings in the classified directories are part and parcel of the telephone service rendered to the public at large. The company’s contention that the light-faced listings in the classified directories of Manhattan and the Queens, as applied to the instant case, are not subject to the regulations of the tariff, appears to be patently fallacious. It is conceded that tariff rates could not be changed at the whim and caprice of the defendant telephone company, that any tariff rates that were to be effectuated would necessarily have to be achieved by the filing of amended tariff rates. If the defendant telephone company should deem it convenient or expeditious to print more than one alphabetical directory in the Borough of Brooklyn or in any other borough or even consolidate some of the alphabetical telephone directories and follow the same procedure with respect to classified directories, it could in effect change the tariff rates without filing proper applications. The law sanctions? stability in rates and frowns upon uncertainties which could work to the *682 disadvantage of the consuming public. Changes in rates cannot be made without applications to the Public Service Commission. See City of New York v. New York Tel. Co. (115 Misc. 262, 267-268 [Lehman, J.].): “ Section 92 of the law [Public Service Law] .requires every telephone corporation to file schedules of its charges and provides that unless the commission otherwise orders no change shall be made in any rate * * * As long as such order remains in force the telephone company is bound by it ’ ’.
See Matter of National Merchandising Corp. v. Public Serv. Comm. (5 N Y 2d 485, 490): “ Directories provide a useful and necessary service which facilitates the use of telephones. Accordingly, ordinary alphabetical listings in both the general directory and in the classified directory are subject to the jurisdiction of the commission.”
I therefore find that within the definition of subdivision B2(b) and B2(c), the telephone service of the plaintiff is located within the Boroughs of Brooklyn, Queens and Manhattan. It was, never intended that the words 1 ‘ the telephone service is located,” be limited only to the Borough of Brooklyn. If there were such an intention the defendant telephone company could have easily filed a tariff which enunciated the limitation to the respective boroughs within the metropolitan area. It is the opinion of the court that Public Service Commission No. 800 and its applicable subdivisions can lend itself only to this decision. This amended tariff regulation was issued on February 20,1962, became effective April 1,1962, and was filed and drawn by Eric B. Nelson, Associate General Counsel, 140 West Street, New York. The filing took place on February 20, 1962. It became effective April 1, 1962. The interim period between February 20, 1962 and April 1, 1962 (the effective date) had for its object the giving of notice to the consumer, of what the rates would be for additional listings. How would the ordinary man interpret the proposed regulation? Would the ordinary man reading the proposed tariff regulation in its entirety especially in connection with the words u * * * in the New York Metropolitan Exchange Area,” (see regulation rates [B3a]) give it any other meaning but that the rates for the first free listing and additional listings are regulated rates for all of the classified directories within the metropolitan area?
The law is well established that insofar as it applies to tax law, such law should be interpreted as the ordinary person would interpret it (see 58 N. Y. Jur., Taxation, p. 28, § 9). The impact of this principle of law applies even with greater force to the subject regulation.
*683 I find that the public at large reading the proposed and finally established regulation could come to no other conclusion but that the listings of Manhattan and Queens directories are embraced for a Brooklyn businessman by the tariff regulation. The language, as the record reveals, was the craftsmanship nf the telephone -company and its counsel. All reasonable implications from the instrument itself must be construed against the draftsman of the instrument. The very acts and conduct of the defendant telephone company bear out the contention of the plaintiff that the defendant viewed the additional listings in the Manhattan and Queens telephone directory as being within the tariff regulation.
For many years prior to 1962 and thereafter the plaintiff had alphabetical listings in the white pages of the telephone directory for the Boroughs of Queens, Brooklyn and Manhattan, and from April 1, 1962, to the present date, the plaintiff utilized additional listings in the Brooklyn, Manhattan and Queens classified directories. In 1965, and 1966, the defendant telephone company increased its listings for Manhattan and Queens from $.75 per listing to $1 per listing. The plaintiff in paying the bill for these listings refused to accept the additional charge and made deductions which were accepted by the telephone company. The court construes this to be some evidence that the defendant telephone company accepted the interpretation that the court is now giving to the tariff listing rate. The acceptance of the deduction of the overcharge to the New York Telephone Company for the years 1965 and 1966, significantly indicates that the defendant telephone company acceded to the viewpoint of the plaintiff.
The plaintiff admitted that it had signed an order for the listings for the years 1967 and 1968. It was undisputed that this order was signed in blank, that the increased rates were written in by the defendant telephone company, and when the plaintiff objected to the increased rates, the telephone company representative advised the plaintiff that if it did not accept the increased rates, as prescribed by the telephone company, its future listings, which the plaintiff testified were essential to the well-being of its business, would be denied to the plaintiff. The plaintiff cannot be deemed to have waived its rights. The tariff regulation applies in full force and effect and is not negated or vitiated by the order for listings.
The defendant claims that this court has no jurisdiction since it is vested in the Public Service Commission, and therefore the subject matter of this dispute should be relegated to the commission. Section 93 of the Public Service Law reads as follows: *684 “ In case any telegraph corporation or telephone corporation shall do or cause to be done or permit to be done any act, matter or thing prohibited, forbidden * * * the telephone corporation shall be liable to the person or corporation affected thereby for all loss, damage or injury caused thereby or resulting therefrom and in case of recovery if the court shall find that such act or omission was willful it may in its discretion fix a reasonable counsel or attorney’s fee * * * An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any such person or corporation.”
By its clear language the court is vested with jurisdiction to determine the issue. Since there is no administrative question involved, the court is called upon to determine the mere question of fact as to whether the telephone company has caused damage to the plaintiff by the wrongful application of the tariff regulation. Further, the plaintiff does not claim that the tariff charges filed are unreasonable or unjust. The plaintiff raised the question of law, namely, that the telephone company had no power to make the overcharges for the 1967 and 1968 listing in the Queens and Manhattan classified directories. The court agrees with this contention based upon the language of section 93 of the Public Service Law and the authoritative case law.
1. See Pennsylvania R. R. v. Puritan Coal Co. (237 U. S. 121, 131-132): “ But if the carrier’s rule, fair on its face, has been unequally applied and the suit is for damages, occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff’s damage.”
2. See Kovarsky v. Brooklyn Union Gas Co. (253 App. Div. 635, 637, affd. 279 N. Y. 304):
“ The Commission [Public Service Commission] has only such powers as are specifically conferred by statute or necessarily implied therefrom. * * * The Legislature has clothed it with the power to fix just and reasonable rates and charges, after hearing and investigation. * * * The evident intent is that the Commission shall function as a fact-finding body; that where a rate or charge is permissible at all, the Commission shall determine what amount is just and reasonable. It seems equally evident that it is not the function of the Commission to determine questions of law. * * *
‘ ‘ The plaintiff in this action does not claim that the reconnection charge is unjust or unreasonable in amount. He claims that any charge at all is forbidden by the statute. The question *685 which he raises is purely one of law, and the Public Service Commission is without power to determine it.”
3. See Matter of Solomon v. Public Serv. Comm. (286 App. Div. 636, 637): “ The Public Service Commission, in the exercise of its general regulatory powers * * * has taken jurisdiction over charges for lightface listings in the company’s classified directory and pursuant to its direction the company has filed a tariff with respect to such listings.”
The plaintiff claims that it is entitled to recovery of counsel fees pursuant to section 93 of the Public Service Law. The pertinent portions of section 93 are “ In case of recovery if the court shall find that such act or omission was willful it may in its discretion fix a reasonable counsel or attorney’s fee ”.
The court finds that the defendant telephone company did not willfully within the contemplation of the statute violate the rate sch.ed.ules. At most, the conduct of the defendant arose out of a mistake in interpretation and therefore the court, in the exercise of its discretion, denies the application'of the plaintiff for the fixation of counsel fees. In the case of McDougall v. Service Garage (187 Misc. 950, 953-954) the court stated: “ The word ‘ wilfully ’ in this statute which imposes a penalty of forfeiture, means much more than intentionally. It means malevolently, With an evil purpose and without grounds for believing the act to be lawful. It implies some element of turpitude. As Justice Holmes said in Towne v. Eisner (245 U. S. 418, 425): ‘ A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used. ’ ’ ’
Again in the case of Manufacturers Trust Co. v. Arvin Chemists (187 Misc. 38, 39): “ The word ‘wilfully ’ should, I think, be applied to a specific intention on the part of the landlord to violate the law, to defy the statute, an intent deliberately to exact a rent known to the landlord to be unlawful, or at least one which it may be fairly inferred that the landlord as a reasonable man knew was unlawful. That, I think, is what the Legislature meant by the word ‘ wilfully ’ in section 4 of chapter 314 of the Laws of 1945 (Business Rent Law). I do not believe that the Legislature intended to impose the penalty of forfeiture for an honest mistake of judgment, which is the most that can be charged against the landlord in his case.”
The court makes a finding that the act or omission of the telephone company was not willful.
The court therefore finds that the plaintiff has by a fair preponderance of evidence sustained its burden of proof on the *686 overcharges in the sum of $623 and therefore renders judgment in that sum with interest thereon from August 1, 1968.
The plaintiff has failed to prove its second cause of action by a fair preponderance for reasonable attorney’s fees and therefore the court dismisses said cause of action on the merits.
The parties waive formal findings of facts and the foregoing constitutes the decision of the court.